Cristina Perez Hesano (#027023)
PEREZ LAW GROUP, PLLC
7508 N. 59th Avenue
Glendale, Arizona 85301
Phone: (602) 730-7100
Fax: (602) 794-6956
cperez@perezlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**Linda Hulewat; Karen Foti Williams; Ralph Gallegos; Michael Martinez; Lynnae Anderson; Candia Franklin; Marie Therese Montoya; Charles Peterson; Robert Kirk; Marilyn Zajacka; Lynda Israel; Latricia Pelt; Barry Pelt; Ken Waters; Brenda Moreno-Decerra; Robert Ahrensdorf;** and **David Yeager**; individually, and all others similarly situated,

Plaintiffs,

v.

**Medical Management Resource Group, L.L.C.; Barnet Dulaney Perkins Eye Center, PC; Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute; Southwestern Eye Center, Ltd.;** and **Eye Associates of Nevada d/b/a SWEC Vision Institute**,

Defendant.

Case No. 2:24-cv-00377-DJH

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
III. PROCEDURAL HISTORY ..... 2
IV. THE SETTLEMENT TERMS ..... 5
A. Proposed Settlement Class ..... 5
B. The Settlement Fund ..... 5
C. Settlement Benefits for the Damages Settlement Class ..... 5
1. Out-of-Pocket Expense Claims ..... 5
2. Pro-Rata Cash Payment ..... 6
D. The Settlement Benefits to the Injunctive Relief Class ..... 7
E. Class Notice ..... 7
F. Claims Process ..... 9
G. Settlement Administrator ..... 9
H. Opt-Out and Objection Procedures ..... 11
I. Release of Claims ..... 12
J. Attorneys' Fees and Costs ..... 13
K. Class Representative Service Awards ..... 13
V. LEGAL AUTHORITY ..... 13
VI. ARGUMENT ..... 14
A. The Settlement Satisfies Rule 23(a). ..... 15
1. The Proposed Class is Sufficiently Numerous. ..... 16
2. The Settlement Class Satisfies the Commonality Requirement. ..... 16

3. Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class. ..... 17

4. Plaintiffs Will Adequately Protect the Interests of the Class. ..... 18

5. The Class is Ascertainable. ..... 19

B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement. . 19

C. The Injunctive Relief Class Satisfies Rule 23(b)(2) ..... 22

D. The Settlement Should Be Preliminarily Approved Pursuant to Rule ..23(e). 23

1. The Strength of Plaintiffs' Case ..... 25

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..... 26

3. The Risk of Maintaining Class Action Through Trial ..... 27

4. The Amount Offered in Settlement to the Damages Settlement Class ... 27

5. The Extent of Discovery Completed and the Stage of Proceedings ..... 28

6. The Experience and Views of Counsel ..... 29

7. Governmental Participants ..... 30

8. The Reaction of the Class Members to the Proposed Settlement ..... 30

9. Lack of Collusion Among the Parties ..... 30

10. The Settlement Treats Settlement Class Members Equitably ..... 30

E. The Court Should Approve the Proposed Notice Program ..... 32

F. Appointment of the Settlement Administrator ..... 33

G. Appointment of Class Counsel ..... 33

VII. CONCLUSION ..... 34

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 14, 15, 19, 20

*Bloom v. City of San Diego*,
No. 17-cv-02324, 2024 WL 1162103 (S.D. Cal. Mar. 18, 2024) .......... 28, 29

*Butler v. Sears, Roebuck & Co.*,
727 F. 3d 796 (7th Cir. 2013) .......... 19

*Bykov v. DC Trans. Services, Inc.*,
No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) .......... 22

*Calderon v. Wolf Firm*,
No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) .......... 27

*Carter v. Vivendi Ticketing US LLC*,
No. 2022-01981-CJC, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) .......... 25

*Chester v. TJX Cos.*,
No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) .......... 25

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 13

*Cochran v. Accellion, Inc.*,
No. 5:21-cv-01887-EJD (N.D. Cal.) (June 30, 2021) .......... 27

*Dennis v. Kellogg Co.*,
No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .......... 24

*Dickey's Barbeque Restaurants, Inc.*,
No. 20-cv-3424 (N.D. Tex.) .......... 26

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 15, 17

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) .......... 24

*Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ..................... 25

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ..................... 23

*Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ... 23

*Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023)........ 16, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338 ..................... 17, 19, 24

*Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) ..................... 28

*Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017 (C.D. Cal. 2020) ..................... 15

*Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ... 29

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ..................... 20, 27

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................... 24

*In re LifeLock, Inc.*, MDL No. 08-1977, 2010 U.S. Dist. LEXIS 102612 (D. Ariz. Aug. 25, 2010) . 22

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ..................... 20, 27

*In re Marriott Int'l Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) ..................... 26

*In re Tableware Antitrust Litig.*,

484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 23, 29

*In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ........ 25, 27

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........ 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig*., No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) ........ 20

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ........ 17, 20

*Kastler v. Oh My Green*, No. 19-cv-02411, 2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) ........ 28

*Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504 (C.D. Cal. 2012) ........ 19

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) ........ 18

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........ 27

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........ 21

*Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310 (C.D. Cal. 2015) ........ 17

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. 2006) ........ 23

*Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036 (9th Cir. 2012) ........ 17

*Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ........ 23

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,

303 F.R.D. 337 (E.D. Cal. 2014) ........ 23

*Orantes-Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982) ........ 15

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
65 F. Supp. 3d 1046 (D. Or. 2014) ........ 18

*Parsons v. Kimpton Hotel & Rest. Group*, *LLC*,
No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ........ 20

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........ 31

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ........ 15

*Reyes v. Experian Info. Sols., Inc.*,
No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ........ 22

*Smith v. Triad of Ala., LLC*,
No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........ 26

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........ 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 16

*Williams v. Oberon Media, Inc.*,
468 F. App'x 768 (9th Cir. 2012) ........ 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ........ 21

**Other Authorities**

*Manual for Complex Litigation (Fourth)* (2004) ........ 13, 14, 15

William B. Rubenstein, 1 Newberg on Class Actions (5th ed.) ........ 18

Wright, et al., Fed. Prac. & Proc. (2d ed. 1986) ........ 19

**Rules**

Federal Rules of Civil Procedure, Rule 23 ............ 15, 17, 19, 20, 21, 22, 24, 31, 32

## I. INTRODUCTION

Plaintiffs[1] Linda Hulewat, Karen Foti Williams, Ralph Gallegos, Michael Martinez, Lynnae Anderson, Marie Therese Montoya, Charles Peterson, Robert Kirk, Marilyn Zajacka, Lynda Israel, Latricia Pelt, Barry Pelt, Ken Waters, Robert Ahrensdorf, and David Yeager ("Plaintiffs"), respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendants Medical Management Resource Group, L.L.C.; Barnet Dulaney Perkins Eye Center, PC ("Barnet"); and Southwestern Eye Center, Ltd. ("SWEC") (collectively, "Defendant" or "American Vision") and together with Plaintiffs, the "Settling Parties") have reviewed this filing and do not oppose this Motion. A copy of the Settlement Agreement and its exhibits are attached as **Exhibit 1**. The Settlement is fair, reasonable and adequate, warranting preliminary approval and notice should be distributed to Class Members.

## II. STATEMENT OF FACTS

This litigation arises from a cyberattack which occurred on or about November 14, 2023 (the "Data Breach"). S.A. at 2. Following an internal investigation, American Vision discovered that an unauthorized party had obtained the Private Information of their current and former patients. ECF 28 ("Complaint"). ¶ 47. On or around February 15, 2024, Defendant began notifying Plaintiffs and the Settlement Class about the Data Breach and that this incident potentially involved Plaintiffs' and Settlement Class Members' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively defined herein as

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit 1***.

"Personal Information"). *Id.* ¶¶ 120-121, 133-134, 146-147, 159-160, 173-174, 187-188,200-201, 212-213, 224-225, 236-237, 249-250, 274-275, 288-289, 302-303, 315-316.

## III. PROCEDURAL HISTORY

On February 23, 2024, Plaintiff Linda Hulewat filed a class action complaint against Medical Management Resource Group LLC d/b/a American Vision alleging various claims arising from the Data Breach. ECF 1. Shortly after, fourteen additional cases were filed, all arising from the same Data Breach and alleging virtually identical claims. On April 15, 2024, Plaintiffs filed a Motion to Consolidate Actions all fifteen actions. ECF 15. On April 25, 2024, the Court entered an order consolidating the related actions into the first-filed action and setting a deadline for Plaintiffs' consolidated complaint. ECF 16.

On August 1, 2024, Plaintiffs filed their Consolidated Complaint ("Complaint") asserting the following causes of action: (i) negligence against Defendant American Vision, (ii) negligence per se against Defendant Medical Management Resource Group, L.L.C., (iii) unjust enrichment against Medical Management Resource Group, L.L.C., (iv) Negligence against Ophthalmologist Defendants,[2] (v) Negligence *per se* against Ophthalmologist Defendants, (vi) breach of express contract against Ophthalmologist Defendants, (vii) breach of implied contract against Ophthalmologist Defendants, (viii) breach of confidence against Ophthalmologist Defendants, (ix) breach of third-party beneficiary contract against Medical Management Resource Group, L.L.C., and (x) breach of fiduciary duty

---

[2] Ophthalmologist Defendants comprise Defendants Barnet Dulaney Perkins Eye Center, PC, Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute, Southwestern Eye Center, Ltd., and Eye Associates of Nevada d/b/a Wellish Vision Institute.

against Ophthalmologist Defendants, (xi) invasion of privacy, (xii) unjust enrichment against Ophthalmologist Defendants, (xiii) violation of Arizona Consumer Fraud Act against Medical Management Resource Group, LLC, Barnet, and SWEC, (xiv) violation of Texas Deceptive Trade Practices against SWEI, (xv) violation of Nevada Deceptive Trade Practices Act against Wellish and, (xvi) Declaratory Judgement. ECF 28.

Shortly thereafter, the Parties decided to explore early resolution of this matter and scheduled a mediation for November 8, 2024. On September 11, 2024, the Court ordered a stay of all current deadlines until November 8, 2024, pending the outcome of the mediation. ECF 48.

The Parties attended mediation on November 8, 2024, with the well-respected Hon. Diane M. Welsh (Ret.) of JAMS. Despite extensive, arm's length negotiations under the guidance of the mediator, the Parties were unable to come to an agreement. Joint Declaration of Plaintiffs' Counsel ("Joint Decl.," attached hereto as **Exhibit 2**). ¶¶ 7,14.

Following the unsuccessful mediation, on November 15, 2024, Medical Management Resource Group LLC, Barnet Dulaney Perkins Eye Center PC, and Southwestern Eye Center Limited moved to dismiss for a failure to state claim. ECF 52. Defendant Eye Associates of Nevada and Defendant Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute also moved to dismiss for a lack of jurisdiction that same day. ECF 51. On December 3, 2024, Defendant Barnet Dulaney Perkins Eye Center PC, Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute, Southwestern Eye Center Limited, Eye Associates of Nevada, and Medical Management Resource

Group LLC moved to stay discovery pending the two motions to dismiss, to which Plaintiffs opposed on December 9, 2024. ECF 57, 59.

The Court granted Defendant's motion to stay on January 3, 2025. ECF 60. On January 16, 2025, Plaintiffs filed their opposition to Defendant's motions to dismiss for failure to state a claim and for lack of jurisdiction. ECF 62, 63. Defendant responded to Plaintiffs' opposition on February 7, 2025. ECF 64, 65. On May 16, 2025, the Court granted the motion to dismiss for lack of jurisdiction and terminated Defendant Eye Associates of Nevada d/b/a Wellish Vision Institute and Defendant Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute from this action. ECF 74.

The parties also engaged in formal discovery during this time. In addition to serving their initial disclosures, Plaintiffs prepared 14 interrogatories and 20 requests for production of documents on Defendant. Defendant served 18 interrogatories and 20 documents requests on Plaintiffs. Plaintiffs, with Class Counsel and Plaintiffs' Counsel's guidance, prepared objections and responses to the discovery requests. Joint Decl., ¶ 8.

Shortly thereafter, the Settling Parties once again decided to explore resolution of this matter. The Settling Parties scheduled and attended mediation on August 26, 2025, with the well-respected Hon. David Jones (Ret.) of Resolute Systems, LLC. Joint Decl., ¶ 15. After extensive, arm's length negotiations under the guidance of the mediator, the Settling Parties agreed to terms of the Settlement in principle. *Id.* ¶ 18. The Settling Parties then spent time finalizing the full scope of the Settlement Agreement and executed the same on November 17, 2025. *Id.*

On October 9, 2025, the parties filed a joint status report on settlement and a motion to stay, which the Court subsequently granted on October 15, 2025. ECF 79, 80.

## IV. THE SETTLEMENT TERMS

### A. Proposed Settlement Class

The Settlement provides relief for both an Injunctive Relief Class and a Damages Settlement Class. Settlement Agreement ("S.A.") ¶ 1.32. The Injunctive Relief Class is defined as "all individuals whose personal information is collected or maintained by Defendant." *Id.* ¶ 1.15. The Damages Settlement Class is defined as the "approximately 258,070 U.S. residents whose Social Security numbers and other personal information were compromised in the Data Breach." *Id.* ¶ 1.9.

### B. The Settlement Fund

Under the Settlement Agreement, Defendant shall fund a non-reversionary Settlement Fund ("Settlement Fund") in the amount of one million seven hundred and fifty thousand dollars ($1,750,000). S.A., ¶ 1.33. The Settlement Fund shall be used to cover all Settlement Administration Costs, all valid Claims by the Damages Settlement Class, Service Awards to the Class Representatives, and any attorneys' fees and expenses to Class Counsel and Plaintiffs' Counsel. S.A., ¶ 2.13.

### C. Settlement Benefits for the Damages Settlement Class

The Settlement provides for the following benefits for the Damages Settlement Class:

#### 1. Out-of-Pocket Expense Claims

Damages Settlement Class Members may submit a Claim for Out-of-Pocket Expenses up to $3,000.00 per Damages Settlement Class Member upon presentment of documented losses fairly traceable the Data Breach. S.A., ¶ 2.2.1(b). Damages Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* Examples of documented out-of-pocket losses includes, unreimbursed losses relating to fraud or identity theft; professional fees including

attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after November 2023 that the claimant attests were caused or otherwise incurred as a result of the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. *Id.* If a claim for documented losses is denied, the Damages Settlement Class Member will automatically be eligible to receive the Pro Rata Cash Payment. *Id.* ¶ 2.2.2.

The documentation necessary to establish Out-of-Pocket Expenses is not overly burdensome and can consist of documents such as receipts from third parties, highlighted account statements, phone bills, gas receipts, and postage receipts, among other relevant documentation. If the claim is rejected for any reason, there is also a consumer-friendly process whereby claimants will have the opportunity to cure any deficiency in their submission if the Settlement Administrator determines a claim for Out-of-Pocket Expenses is deficient in whole or part.

**2. Pro-Rata Cash Payment**

As an alternative to claims for Out-of-Pocket Expenses, a Damages Settlement Class Member may elect to receive a Pro-Rata Cash Payment, which is a *pro rata* cash payment that will be adjusted up or down depending on the number of claims made and the amount remaining in the Settlement Fund after payments for Out-of-Pocket Expenses, attorneys' fees and costs, service awards, and Settlement Administration costs. S.A., ¶¶ 2.2.1(a).

**D. The Settlement Benefits to the Injunctive Relief Class**

In order to secure Injunctive Relief Class Members' Personal Information, Defendant has undertaken significant steps to further secure its systems and environments. *Id.* ¶ 2.3. Defendant implemented the following since the Data Breach and will agree to maintain these systems in place for three years subject to upgrading to new versions or replacing with equivalent or superior software if the software listed is discontinued or in Defendant's reasonable business judgment: creation and maintenance of a Chief Information Officer role, retention of a dedicated Information Security Training Specialist, maintenance of a cross-functional Cybersecurity Steering Committee, enhanced cybersecurity training, penetration testing, enhanced data classification policies, regular security risk assessments, and adopting and maintaining an amended security policies. *Id.* The cost of these security-related measures is valued at approximately $2,787,630, all of which will be paid by Defendant separate from the Settlement Fund. *Id*. This injunctive relief has substantial value. *Id*.

**E. Class Notice**

The Parties have agreed on a comprehensive Notice Program, which includes direct notice to the Damages Settlement Class via e-mail or postal mail, if no email address is available, and via publication notice to the Injunctive Relief Class. S.A., ¶ 10.1; Decl. of Christie K. Reed of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Decl."), ¶ 9.

Within 21 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program using the forms of Notice approved by the Court. *Id*. Where email addresses are provided by Defendant

for the Damages Settlement Class Members, Email Notice shall be sent by email. Damages Settlement Class members for which email addresses are not provided, or for those in which emails bounced-back (and a postal address is provided by Defendant), shall receive a Short Form Notice by mail. *Id*.

Damages Settlement Class Members may request a Long Form Notice, review key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id*. The Notice, in forms similar to those attached to the Settlement Agreement as Exhibit C, will inform the Settlement Class Members of the general terms of the settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Damages Settlement Class Member opt-out deadline; the deadline for Damages Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Fairness Hearing date; and the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *Id.* Additionally, opt-out procedures will be explained, as well as how Damages Settlement Class Members may exercise their right to object to the proposed Settlement and/or Application for Attorneys' Fees, Costs and Service Awards at the Final Fairness Hearing. *Id*. Publication notice will issue to inform the Injunctive Relief Class about the settlement, with that publication directing Settlement Class Members to the Settlement Website for more information. *Id.*; Kroll Decl., ¶¶ 15-21.

**F. Claims Process**

For Damages Settlement Class Members to receive cash benefits, they must accurately and timely submit a Claim by the Claim Form Deadline. S.A., ¶ 2.2.1. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id*. 1.5. The Settlement Administrator will provide the Damages Settlement Class Members who submitted Valid Claims with their cash benefits no later than 30 days after the Effective Date. S.A., ¶ 10.3. Cash Payments will be made electronically or by paper check, by sending Settlement Class Members with Valid Claims and an email to select from alternative forms of electronic payment or by paper check. *Id*. ¶ 10.3.

**G. Settlement Administrator**

Kroll Settlement Administration ("Kroll") is a well-respected and reputable third-party administrator that has significant experience with data breach settlement. Joint Decl. ¶ 19; Kroll Decl. ¶ 4. The Settlement Administrator shall effectuate the Notice Program, handle the Claims Process, administer the Settlement Fund, and distribute the Damages Settlement Class Member Benefits to Damages Settlement Class Members. S.A. The Settlement Administrator's duties include, *inter alia*:

a. Completing the Court-approved Notice Program by noticing the Damages Settlement Class by Short Form Notice, sending out Long Form Notices and paper Claim Forms on request from Settlement Class Members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to the Damages Settlement Class Members who submit Valid Claims;

b. Establishing and maintaining the Settlement Fund the Escrow Account approved by the Parties;

c. Establishing and maintaining a post office box to receive opt-out requests from the Damages Settlement Class, objections from the Damages Settlement Class Members, and Claim Forms;

d. Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

e. Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f. Responding to any mailed Settlement Class Member inquiries;

g. Processing all opt-out requests from the Damages Settlement Class;

h. Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i. In advance of the Final Fairness Hearing, preparing a declaration for the Parties confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of each benefit claimed, providing the names of

each Damages Settlement Class Member who timely and properly requested to opt-out from the Damages Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j. Distributing, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

k. Paying Court-approved attorneys' fees, costs, and Service Awards out of the Settlement Fund;

l. Paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

m. Any other Settlement administration function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments access information have been properly distributed.

**H. Opt-Out and Objection Procedures**

Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Damages Settlement Class Members who do not wish to participate in the Settlement may opt-out up to 60 days after the Notice Date. S.A., ¶ 4.1. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator and include a statement clearly manifesting a request to be excluded from the Settlement Class. *Id.* Any Damages Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id*. ¶ 4.2.

The Agreement and Long Form Notice also specify how the Damages Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs and Service Awards. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period (60 days after the Notice Date), as specified in the Notice. *Id.* ¶ 5.1. It must also set forth: i) the objector's full name and address; (ii) the case name and docket number: *Hulewat et al. v. Medical Management Resource Group LLC d/b/a American Vision Partners, et al.*, Case No. 2:24-cv-00377-DJH; (iii) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Damages Settlement Class, or to the entire Damages Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. *Id.* Any Damages Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 5.2.

**I. Release of Claims**

Plaintiffs and any Damages Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against

the Released Parties. S.A. ¶ 7.1. Furthermore, upon the effective date each Injunctive Relief Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Defendant from any and all claims for injunctive and/or declaratory relief. *Id.* ¶ 7.4.

### J. Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiffs will seek an award of attorneys' fees and reimbursement of litigation expenses not to exceed one-third of the value of the Settlement, to be paid from the Settlement Fund. S.A., ¶ 8.4. The attorneys' fees and costs will be formally sought in the Application for Attorneys' Fees, Costs, and Service Awards field within the Motion for Final Approval no less than 45 days before the original date set for the Final Approval Hearing. *Id.*, ¶ 8.2. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek.

### K. Class Representative Service Awards

Subject to Court approval, the Plaintiffs will apply for the payment of a $2,500.00 Service Award to each of the Class Representatives for their service on behalf of the Settlement Class. S.A., ¶ 8.3.

## V. LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness

hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.

## VI. ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and given the relatively small value of the claims of the individual class members, would be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 620 (1997). For example, in certifying a settlement class case, certain difficulties inherent in management the class action need not be confronted. *See id.* Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Plaintiffs here seek certification of Settlement Class consisting of:

> All individuals whose personal information is collected or maintained by Defendant as well as the U.S. residents whose Social Security numbers and/or other personal information were compromised in the Data Breach. Excluded from the Settlement Class are the Defendant, their representatives, any judicial officer presiding over the matter, and such judicial officers' immediate family members and staff. The Damages Settlement Class Members are eligible to submit a claim under the Damages Class Benefits. S.A., ¶ 1.15, 1.9.

For the reasons set forth below, the Court should certify the Class for settlement purposes and grant preliminary approval of the Settlement.

**A. The Settlement Satisfies Rule 23(a).**

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for Complex Litigation (Fourth)*, § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

**1. The Proposed Class is Sufficiently Numerous.**

While there is no fixed point where the numerosity requirement is met, courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1027 (C.D. Cal. 2020) (citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). Here, there is an estimated number of 258,070 U.S. residents in the Damages Settlement Class Members and 1,341,000 U.S. residents in the Injunctive Relief Class. Accordingly, the proposed settlement class easily satisfies Rule 23's numerosity requirement.

**2. The Settlement Class Satisfies the Commonality Requirement.**

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth of falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendants'] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include but are not limited to: whether Defendants engaged in the wrongful conduct

alleged; whether Class Members' Personal Information was comprised in the Data Breach; whether American Vision provided timely notice of the Data Incident; whether Defendant owed a duty to Plaintiffs and Class Members; whether Defendant acted negligently; whether Defendant breached their duties; and whether Defendant was unjustly enriched as alleged in the Consolidated Complaint. These questions are the same across the Settlement Class, as American Vision's and the Ophthalmologist Defendants' policies and procedures relating to data security remained consistent throughout the time period encompassing the Data Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality).

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

**3. Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class.**

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the Personal Information of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Personal Information was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *Just*

*Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

**4. Plaintiffs Will Adequately Protect the Interests of the Class.**

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338, 131; *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiffs have no conflicts of interest with other Class Members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted this case on behalf of the class and continue to do so. Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for Defendants' alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members. The group of Plaintiffs contains individuals whose Personal Information was compromised in the Data Breach, ensuring that the interests of all Settlement Class Members, including both the Injunctive Relief and the Damages Settlement Class, are adequately represented.

Further, counsel for Plaintiffs have extensive combined experience as vigorous class action litigators and are well suited to advocate for the Class. *See* Joint Decl., ¶ 21. Thus, Plaintiffs satisfy the requirement of adequacy.

**5. The Class is Ascertainable.**

Rule 23 also requires, at least implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (quotation marks omitted) (alteration added). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.)). This requirement does not entail, however, that "every potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The purported class members, including both the Damages Settlement Class Members and Injunctive Relief Class have been identified through Defendant's records.

**B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Damages Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. & Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 526 (C.D. Cal. 2012) (*quoting Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F. 3d 796, 801 (7th Cir. 2013) (quotations omitted).

As discussed above, Plaintiffs allege that common questions predominate in this case over any questions affecting only individual members. Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect patients' Personal Information—namely their Social Security numbers. Importantly, questions about Defendants' data security procedures at the time of the Data Breach can be resolved, for purposes of settlement only, using the same evidence for all Damages Settlement Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) [.]'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating claims arising from the Data Breach—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig*., No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019), ECF 390; *Parsons v. Kimpton Hotel & Rest. Group*, *LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019), ECF 111; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for hundreds of thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. Here, there are approximately 258,070 U.S. residents in the Damages Settlement

Class, with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

**C. The Injunctive Relief Class Satisfies Rule 23(b)(2)**

Fed. R. Civ. P. 23(b)(2) class can be certified where the Rule 23(a) factors are met and where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, the Settlement contemplates a Rule 23(b)(2) Injunctive Relief Class to deliver the benefits of American Vision's cybersecurity improvements to all Settlement Class Members. Certification of that class is appropriate because each member had their Personal Information impacted by the Data Breach and each stands to benefit from Defendant's class-wide cybersecurity improvements, which ensure their personal information that Defendant still holds is protected moving forward. *See, e.g., In re LifeLock, Inc.*, MDL No. 08-1977, 2010 U.S. Dist. LEXIS 102612, at *12 (D. Ariz. Aug. 25, 2010) (certifying a Rule 23(b)(2) class for settlement purposes where "the relief sought necessarily affects all class members.").

**D. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014) (quotations omitted). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and, (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider

several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

**1. The Strength of Plaintiffs' Case**

Plaintiffs believe they have built a strong case for liability. Plaintiffs believe their claims are viable and that they can prove Defendant's data security was inadequate. If they establish that central fact, Defendant is likely to be found liable for Plaintiffs' claims. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. As evidenced by their motion to dismiss, Defendant has and will continue to deny any liability stating that their security measures were reasonably safe and compliant with industry standards.

It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX*

*Cos.*, No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, trial, and appeal, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Joint Decl., ¶¶ 21-24.

**2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While Plaintiffs are confident in their remaining claims, all cases, including this one, are subject to substantial risk. This case involves a Settlement Class of approximately 1,600,000 individuals, including approximately 258,070 Damages Class Members who had their Social Security numbers exposed in the incident, all of whom would need to establish cognizable harm and causation, and a complicated and technical factual background.

Although nearly all class actions involve a high level of risk, expense, and complexity—"[t]hese general risks are heightened in data breach cases like this one." *Carter v. Vivendi Ticketing US LLC*, No. 2022-01981-CJC, 2023 WL 8153712, at *6 (C.D. Cal. Oct. 30, 2023); *see also Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). This case is no different in that it would present risk at class certification with no guarantee that the

Court would certify Plaintiffs' proposed Class. Accordingly, this factor favors approval.

### 3. The Risk of Maintaining Class Action Through Trial

As noted above, Plaintiffs would encounter risks in obtaining and maintaining class certification. Class certification in contested data breach cases is not common—for example, occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15-16 (M.D. Ala. Mar. 17, 2017). In a recent data breach case where classes were contested but ultimately certified, *In re Marriott Int'l Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022), the classes were decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023). The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

### 4. The Amount Offered in Settlement to the Damages Settlement Class

The Settlement makes significant relief available to Damages Settlement Class Members in the form of cash payments and credit monitoring. The amount of compensation per Class Member is substantial. Each Damages Class Member will be entitled to choose between either reimbursement for Out-of-Pocket Expenses or a Pro Rata Cash Payment. If they elect the Pro Rata Cash Payment, the amount Damages Settlement Class Members receive will be calculated *pro rata* according to the Settlement Agreement. S.A., ¶ 2.2.1. This Settlement is a solid result for the Class with its value per class member here is on par with or exceeding that in other

data breach settlements.[3] Because the Settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). Moreover, the significant value of the injunctive relief (approximately $2,787,630) provides meaningful protections to the Injunctive Relief Class, whose information remains in Defendant's records. S.A., ¶ 2.3. Accordingly, this factor favors approval.

**5. The Extent of Discovery Completed and the Stage of Proceedings**

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiffs gathered all the information that was available regarding Defendant and the Data Breach including publicly-available documents regarding the Data Breach. Joint Decl., ¶ 5.The Parties also exchanged confidential information concerning the Data

---

[3] *See, e.g. Dickey's Barbeque Restaurants, Inc.*, No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *Cochran v. Accellion, Inc.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per class member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 Class Members; $1.45 per Class Member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class Members; 10 cents per Class Member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573,582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per class member).

Breach and the Class size in preparation for mediation. *Id.* ¶ 14. During the settlement negotiations, the Settling Parties exchanged informal discovery to the point where "the parties have sufficient information to make an informed decision about settlement," including the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

Class Counsel's extensive experience with representing plaintiffs in data privacy class actions assisted Plaintiffs in efficiently litigating this matter on behalf of the Class. Joint Decl., ¶ 21. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017). Accordingly, Plaintiffs are well-informed about the strengths and weaknesses of this case.

**6. The Experience and Views of Counsel**

Having worked on behalf of the putative class since the Data Breach were first announced, evaluated the legal and factual issues presented in this case, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorses the Settlement. Courts "afford great weight to the recommendation of counsel with respect to the settlement because counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Bloom v. City of San Diego*, No. 17-cv-02324, 2024 WL 1162103, at *5 (S.D. Cal. Mar. 18, 2024) (internal citation omitted); *Kastler v. Oh My Green*, No. 19-cv-02411, 2022 WL 1157491, at *4 (N.D. Cal. Apr. 19, 2022) ("Courts may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement considering Plaintiff's likelihood of

recovery.”) (internal citation and quotation omitted). Accordingly, this factor supports approval.

**7. Governmental Participants**

There is no governmental participant in this matter. This factor is neutral.

**8. The Reaction of the Class Members to the Proposed Settlement**

The Class Representatives fully support this Settlement, yet this factor is neutral given that notice has not yet been issued to the Class informing Class Members about the Settlement.

**9. Lack of Collusion Among the Parties**

The Settling Parties negotiated a substantial Settlement Fund. Class Counsel and Defendant’s counsel are experienced in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint Decl., ¶¶ 20-24. The terms of the Settlement were negotiated at arm’s length and included *two* full-day mediation sessions under the guidance of the mediator Judge Diane M. Welsh (Ret.) of JAMS and Hon. David Jones (Ret.) of Resolute Systems, LLC. Both mediators have considerable experience in mediating data breach class actions. Joint Decl., ¶¶ 14-15. The negotiations were vigorously contested, were overseen by Judge Welsh and Judge Jones and were non-collusive. *Bloom*, 2024 WL 1162103, at *4 (noting “that “the settlement was reached with the assistance of an experienced mediatory further suggests that the settlement if fair and reasonable.”).

**10. The Settlement Treats Settlement Class Members Equitably**

Finally, Rule 23(e)(2)(D) requires that the settlement treats all class members as equitably as possible under the circumstances. In determining whether this factor

weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement treats all Class Members equitably. The distinction between Damages and Injunctive Relief Settlement Class Members is supported by the distinction between the type of data – Social Security numbers – that was accessed by cybercriminals. Joint Decl. ¶ 25. Because the theft of Social Security numbers presents a significantly greater risk of fraud compared with the other Personal Information involved in the Data Breach, the Settling Parties' negotiated a proposed Settlement that provides significant relief to all Settlement Class Members and additional relief to Damages Settlement Class Members, who experienced the theft of Social Security numbers. *Id.* ¶ 26. A Social Security number is typically required to assemble a package of data used by cybercriminals, known as a "Fullz"[4]

[4] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, ***Social Security number***, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge.

package, to impersonate a victim to perpetuate fraud, whereas the other Personal Information exposed in this matter is not. *Id*.

The proposed Settlement provides injunctive relief designed to secure the Personal Information of all Settlement Class Members, without any preferential treatment of the named Plaintiffs or any segments of the class.

While Plaintiffs have been permitted to seek approval of service awards from this Court, as will be explained in detail in Plaintiffs' Motion for Attorneys' Fees, Expenses and Class Representative Service Awards, the contemplated Service Awards of $2,500 per Class Representative are in line with awards granted in similar cases, is presumptively reasonable, and do not call into question Plaintiffs' adequacy or the validity of the Settlement. Accordingly, this factor also weighs in favor of approval.

**E. The Court Should Approve the Proposed Notice Program**

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* at 23(c)(2)(B).

Notice to class members must apprise interested parties of the pendency of the action and afford them an opportunity to potentially object to the settlement. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Here, and after a competitive bidding process, the Parties agreed to a robust notice program to be administered by an experienced third-party settlement administrator—Kroll—which will use all reasonable efforts to provide direct notice to each potential Damages Settlement Class Member via email and/or Short Form

Notice through direct U.S. mail. Notice and Settlement Administration Costs will be paid from the Settlement Fund. S.A., ¶ 10.1. The Settlement Administrator will also establish a dedicated Settlement Website that will contain the Short Form Notice, Long Notice, Claim Form, and other related documents. *Id.* ¶¶ 9.2, 10.1; Kroll Decl., ¶ 22. The Injunctive Relief Settlement class will be notified via publication notice in a manner largely similar to Exhibit E. *Id.* ¶ 10.1 (g). Accordingly, the Notice plans should be approved.

**F. Appointment of the Settlement Administrator**

The Parties request that the Court appoint Kroll to serve as the Settlement Administrator. Kroll has a trusted and proven track record of supporting hundreds of class action administrations, with legal administration experience. Joint Decl., ¶ 19; Kroll Decl., ¶ 4.

**G. Appointment of Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and data privacy class action cases. *See* Joint Decl., ¶ 21. Accordingly, the Court should appoint Gary M. Klinger of Milberg Coleman Bryson Phillips

Grossman PLLC, Raina C. Borrelli of Strauss Borrelli PLLC, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and J. Austin Moore of Stueve Siegel Hanson LLP, as Class Counsel.

## VII. CONCLUSION

The $1,750,000 non-reversionary Settlement Fund, in combination with the substantial and valuable cybersecurity improvements implemented by Defendant, is a substantial recovery for the Class. Accordingly, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement because the Settlement is fair, reasonable, and adequate. A copy of the Proposed Order Granting Preliminary Approval of Class Action Settlement is also submitted herewith for the Court's consideration.

Dated: November 17, 2025 By: */s/ Raina C. Borrelli*

Raina C. Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Cristina Perez Hesano (#027023)
cperez@perezlawgroup.com
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: 602.730.7100
Fax: 623.235.6173

Elaine A. Ryan (AZ Bar No. 012870)
Colleen M. Auer (AZ Bar No. 014637)
**AUER RYAN, P.C.**
20987 N. John Wayne Pkwy.

Suite B104-374
Maricopa, AZ 85139
Telephone: (520) 705-7332
Email: eryan@auer-ryan.com
Email: cauer@auer-ryan.com

Gary M. Klinger *(pro hac vice)*
**MILBER COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Terence R. Coates *(pro hac vice)*
Jonathan T. Deters *(pro hac vice)*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
Email: tcoates@msdlegal.com
Email: jdeters@msdlegal.com

Norman E. Siegel *(pro hac vice)*
J. Austin Moore *(pro hac vice)*
Stefon J. David *(pro hac vice)*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Email: siegel@stuevesiegel.com
Email: moore@stuevesiegel.com
Email: david@stuevesiegel.com

Amanda Boltax *(pro hac vice)*
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

Email: aboltax@hausfeld.com

Patrick Donathen *(pro hac vice)*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: patrick@lcllp.com

Nickolas J. Hagman *(pro hac vice)*
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Ste. 3210
Chicago, IL 60603
Phone: (312) 782-4880
Email: nhagman@caffertyclobes.com

Cecily C. Jordan *(pro hac vice)*
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
Email: cjordan@tousley.com

Charles E. Schaffer *(pro hac vice)*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Email: cschaffer@lfsblaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on November 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 17th day of November, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*

Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com