**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Hulewat, | No. CV-24-00377-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Medical Management Resource Group LLC, et al., | |
| Defendants. | |

On November 17, 2025, Plaintiffs Linda Hulewat, Karen Foti Williams, Ralph Gallegos, Michael Martinez, Lynnae Anderson, Marie Therese Montoya, Charles Peterson, Robert Kirk, Marilyn Zajacka, Lynda Israel, Latricia Pelt, Barry Pelt, Ken Waters, Robert Ahrensdorf, and David Yeager (collectively, "Plaintiffs") filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 83). As the Motion is unopposed, Defendants Medical Management Resource Group, LLC, Barnet Dulaney Perkins Eye Center, PC, and Southwestern Eye Center, Ltd. (collectively, "Defendants") did not file a response. For the reasons stated below, the Court will grant Plaintiff's Motion.

**I.    Background**

This case arises from a cyberattack and resulting data breach (the "Data Breach") that occurred on or around November 14, 2023. (*See generally* Doc. 28).

Defendants generally provide eye care physician services to patients across the country. (*Id.* at ¶ 2). In their practice, Defendants collect and store patients' Personally Identifiable Information ("PII") and Private Health Information ("PHI").    Around

November 14, 2023, cybercriminals infiltrated Defendants' computer systems and absconded with patients' PII and PHI. (*Id.* at ¶ 4). The impacted patients, including Plaintiffs, were notified of the Data Breach on or about February 15, 2024. (*See id.* at ¶ 120). Plaintiffs allege that Defendants failed to protect their sensitive information, resulting in the Breach. (*Id.* at ¶ 1). Consequently, multiple cases were brought regarding the Data Breach, which were all ultimately consolidated into the present action. (*See* Doc. 16).

In the time since, several defendants were dismissed from the action for lack of personal jurisdiction. (*See* Doc. 74). Defendants, likewise, sought dismissal of the action based on a failure to state a claim. (*See* Doc. 52). However, during the pendency of Defendants' Motion to Dismiss, the parties scheduled and attended mediation with a highly experienced mediator. (Doc. 83 at 12). Plaintiffs and Defendants were ultimately able to reach a settlement with the assistance of the mediator. (*Id.*)

## II.     Proposed Settlement Agreement

The parties entered into a Class Action Settlement Agreement (the "Settlement Agreement") on November 17, 2025. The pertinent terms of the Agreement are as follows. The "Settlement Class" is comprised of the Damages Settlement Class Members and the Injunctive Relief Class. The Injunctive Relief Class is defined as:

> [A]ll individuals whose personal information is collected or maintained by Defendant. Excluded from the Injunctive Relief Class are Defendant, their representatives, any judicial officer presiding over the matter, and such judicial officers immediate family members and staff. Plaintiffs Linda Hulewat; Karen Foti Williams; Ralph Gallegos; Michael Martinez; Lynnae Anderson; Marie Therese Montoya; Charles Peterson; Robert Kirk; Marilyn Zajacka; Lynda Israel; Latricia Pelt; Barry Pelt; Ken Waters; Robert Ahrensdorf; and David Yeager are Injunctive Relief Class Members.

(Doc. 83-1 at 8). Simultaneously, Damages Settlement Class Members include:

> [T]he approximately 258,070 U.S. residents whose Social Security numbers and other personal information were compromised in the Data Breach. Excluded from the Damages Class are the Defendant, their representatives, any judicial officer presiding over the matter, and such judicial officers immediate family members and staff. The Damages Settlement Class

Members are eligible to submit a claim under the Damages Class Benefits. Plaintiffs Karen Foti Williams, Michael Martinez, Robert Kirk, Lynda Israel, Ken Waters, and David Yeager are Damages Settlement Class Members.

(*Id.* at 7). These two groups, in combination, make up the Settlement Class. (*Id.* at 12). Those encompassed in the Damages Settlement Class, whose Social Security numbers were compromised, will be entitled to receive monetary compensation. (*See id.*). At the same time, the Injunctive Relief Class will all benefit from the various security measures Defendants will implement. (*See id.* at 16–17).

### A.      Settlement Fund

Under the terms of the Agreement, Defendants will endow a non-reversionary "Settlement Fund" in the amount of $1,750,000.00. (*Id.*) This Fund will be used to pay for Notice and Settlement Administration Costs; all taxes owed by the Settlement Fund; any Court-approved attorney fees, costs, and expenses; any Court-approved Service Awards approved by the Court, and all valid Claims made by the Damages Settlement Class. (*Id.* at 14). Damages Settlement Class Members will have the opportunity to submit a Claim to receive either a Pro-Rata Cash Payment or be reimbursed for Out-of-Pocket Expenses. A Pro-Rata Cash Payment will entitle a claimant to a pro rata settlement payment, "which may increase or decrease the cash payment, subject to the Settlement Fund cap." (*Id.* at 51). Alternatively, a Claim for Out-of-Pocket Expenses can be submitted for "documented out-of-pocket losses reasonably and fairly traceable to the Data Breach." (*Id.* at 15). Such Claims must be supported by documentation and attestation and are subject to a $3,000.00 individual cap. (*Id.* at 16). A "Settlement Administrator" shall be appointed to provide Class Members with notice, review claims, and distribute funds to all valid claimants accordingly. (*Id.* at 28–32). The Agreement provides opt-out and objection procedures for Damages Settlement Class Members. (*Id.* at 22–24).

### B.      Injunctive Relief

Aside from the Settlement Fund, the Agreement provides for various forms of Injunctive Relief regarding Defendants' cybersecurity as consideration to the Injunctive Relief Class. (*Id.* at 16–17). As part of the Injunctive Relief, Defendants shall, amongst

other things, implement a Chief Information Officer role, retain an Information Security Training Specialist, create a Cybersecurity Steering Committee, implement an enterprise-wide cybersecurity training program, engage an independent third-party vendor to conduct periodic penetration testing, and administer an improved disaster recovery solution. (*Id.* at 17–18).

### C.    Fees, Service Awards, and Releases

The Agreement allows for Class counsel to submit a motion for attorney fees and expenses and for Plaintiffs to seek Service Awards of $2,500.00. (*Id.* at 21–22). Finally, Damages Settlement Class Members release Defendants from all claims related to the Data Breach and are enjoined from pursuing any such claims. (*Id.* at 24–25). At the same time, Defendants release Plaintiffs, Damages Settlement Class Members, and Class Counsel of all claims arising out of this Litigation. (*Id.* at 25). Injunctive Class Members release Defendants from any and all claims for injunctive and/or declaratory relief as described in the Agreement, but Injunctive Relief Class Members do not release or otherwise waive any individual claims for monetary relief. (*Id.* at 25–26).

### III.    Legal Standard

While the Ninth Circuit has declared a strong judicial policy for settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), Federal Rule of Procedure 23(e) still requires court approval of any class action settlement. Fed. R. Civ. P. 23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the preliminary approval stage, "courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Where "the parties negotiate a settlement agreement before the class has been certified, "settlement approval requires a

higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (internal quotation marks omitted).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for J. v. Civ. Serv. Comm'n. of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

## IV.    Discussion

The Court will first examine the settlement class to ensure it meets the requirements of Rule 23(a) and (b), then will determine whether the proposed settlement is fair, reasonable, and adequate such that it should be preliminarily certified.

### A.    Settlement Class Certification

The exact definition of the proposed Settlement Class is stated above, though it should be noted that the Class description differs from that offered in the Amended Complaint.  (*See* Doc. 28 at ¶ 326).  Although not unheard of, Plaintiffs' proposed Class is slightly atypical as it is comprised of a class within a class.  The Injunctive Relief Class is defined as "all individuals whose personal information is collected or maintained by Defendant," which presumably encompasses the Damages Settlement Class that is composed of "the approximately 258,070 U.S. residents whose Social Security numbers and other personal information were compromised in the Data Breach."  (Doc. 83-1 at 7–8).  As mentioned and will be discussed further below, Damages Settlement Class Members have the opportunity to obtain monetary compensation, while those only in the Injunctive Relief Class benefit solely from the agreed-upon injunctive relief.  Despite the distinctive sub-class, Plaintiffs seek to certify the Class in its entirety, but they request that the Injunctive Relief Class also be certified under Rule 23(b)(2).  Plaintiffs assert that the proposed Class meets all the necessary requirements to be certified for settlement purposes.  (Doc. 83 at 24–30).

When parties seek class certification for settlement purposes only, the court "must pay undiluted, even heightened, attention to class certification requirements" because, unlike in a fully litigated class action suit, the court will not have future opportunities "to

adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (quotation omitted). Regardless of whether the defendant "agrees that class treatment is appropriate for settlement purposes only," the court must still determine whether class certification is appropriate for the issues in the case before it. *Garrett v. Advantage Plus Credit Reporting Inc.*, 2023 WL 5806408, at *3 (D. Ariz. 2023).

The moving party seeking class certification must show they have satisfied all the prerequisites of Rule 23(a) and at least one subsection of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)). Under Rule 23(a), a proposed class may proceed only if the following prerequisites are met:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Thereafter, for the proposed class to proceed under Rule 23(b)(3), the party seeking certification must demonstrate that "questions of law or fact common to class members [1] predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In turn, under Rule 23(b)(2), a class action may be maintained is "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).[1]

---

[1] Because Plaintiff seeks certification only under Rule 23(b)(3) and (2) (Doc. 80-1 at 26–27), the Court omits the requirements for proposed classes seeking certification pursuant to Rule 23(b)(1).

The moving party must affirmatively demonstrate by a preponderance of evidence compliance with the requirements of both Rule 23(a) and (b). *See Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024). Failure to do so means that the class cannot be certified.

### 1.    Numerosity

First, the numerosity requirement is satisfied where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While the numerosity requirement is not tied to any fixed numerical threshold, generally, a "class of 41 or more is usually sufficiently numerous." 5-23 Moore's Federal Practice—Civil § 23.22 (2016). The Court finds that numerosity exists in light of Plaintiff's estimate that there are approximately 258,070 U.S. residents in the Damages Settlement Class and 1,341,000 U.S. residents in the Injunctive Relief Class. (*See* Doc. 83 at 24).

### 2.    Commonality

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "[t]heir claims must depend upon a common contention of such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is satisfied here because Members had their private information stored by Defendants and therefore "[t]he extensiveness and adequacy of [Defendants'] security measures lie at the heart of every claim." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018).

### 3.    Typicality

Third, the claims or defenses of the class representative must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs and the other Settlement Class Members each had forms of personal information stored by Defendants, which was either compromised or at a substantial risk of being so compromised. (Doc. 83 at 25). Consequently, Defendants' "allegedly

inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *3 (N.D. Cal. 2020). And "it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). Under the present circumstances, typicality is met.

### 4. Adequacy

The fourth requirement assessed by Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that (1) named plaintiffs and their counsel have no conflicts of interest with other class members and (2) named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). As to the former requirement, there are no known conflicts here between either Plaintiffs or counsel and the other Settlement Class Members. On the latter consideration, Plaintiff and counsel have diligently litigated this matter, including by filing an Amended Complaint, defending against two Motions to Dismiss, and participating in discovery efforts, and served the interests of the Class. *See Oliveira v. Lang. Line Services, Inc.*, 767 F. Supp. 3d 984, 1003 (N.D. Cal. 2025). Additionally, Plaintiffs' counsel has assured that that they have extensive experience with complex class actions such as data breach actions. (Doc. 83-2 at ¶ 21); *see Sali v. Corona Regl. Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Therefore, the final 23(a) requirement is met.

### 5. Predominance and Superiority

Turning to Rule 23(b)(3), this Rule imposes two further requirements to establish a valid class: predominance and superiority.

Predominance requires that "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members

of the class in a single adjudication." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (internal quotations and citation omitted). This requirement is met here, where the focus is "the extent and sufficiency of the specific security measures that [Defendants] employed. This is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem*, 327 F.R.D. at 312.

The superiority inquiry requires a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. To do so, the Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A–D).

Upon consideration of the relevant factors, the Court concludes resolving these disputes in a single class action, or in this case a single class settlement, would be more efficient than resolving them on an individual basis. As Plaintiff notes, the damages suffered by individual Members are not sufficient to make it economical to pursue individual actions. Thus, "[c]lass treatment is the superior method of adjudicating the consumer claims arising from the data breach because the issues cannot practically be resolved through millions of individual trials or settlement negotiations." *In re Yahoo!*, 2020 WL 4212811 at *8.

### 6.    Class-Wide Injunctive Relief

Lastly, Rule 23(b)(2) allows the Court to certify a class seeking class-wide injunctive relief if "the party opposing the class acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class[.]" *Dukes*, 564 U.S. at 360. However, "it does not

authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant" nor "when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360–61.

The Court finds that the requirements of Rule 23(b)(2) are preliminarily met with respect to the Injunctive Relief Class because the improvements in Defendants' cybersecurity will benefit the entire class, there is not any different relief to which individual members would be entitled, and each class member is not necessarily entitled to an individualized monetary award.

Because the requirements of Rules 23(a), 23(b)(2), and 23(b)(3) are satisfied, the Court certifies the Settlement Class for settlement purposes only.

### B.    Preliminary Settlement Approval

The Court must now make a preliminary determination regarding whether the proposed settlement and notice are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2). For purposes of preliminary approval, "a district court must evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). At this stage, preliminary approval of a settlement may be granted if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

#### 1.    Fair Negotiations

Plaintiff explains that negotiations in this case were the result of an extensive arm's length process. (Doc. 83 at 12). The negotiations were facilitated by a "well-respected and experienced mediator," and the resulting settlement was based on a thorough evaluation of relevant law and the facts of this case. (*See* Doc. 83-2 at ¶¶ 15–18). The Court has not been presented with any evidence of fraud or collusion underpinning the

Settlement. Thus, the Court finds that, for the purpose of preliminary approval, the Settlement is the result of fair, arm's-length negotiations.

### 2.    Obvious Deficiencies

Upon review of its terms, the Settlement Agreement lacks any obvious deficiencies, meaning this factor weighs in favor of preliminary approval. *See*, *e.g.*, *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at \*10 (N.D. Cal. 2021).

### 3.    Preferential Treatment

In assessing proposed settlements, courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "The goal is to ensure that the class representatives and their counsel do not receive a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.' " *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at \*12 (E.D. Cal. 2020) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)).

Notably, the Settlement here does create a distinction between Class Members as they either belong to the Damages Settlement Class or the Injunctive Relief Class. (*See* Doc. 83 at 39–40). Each Damages Class Member will entitled to either reimbursement for Out-of-Pocket Expenses or a Pro Rata Cash Payment. Out-of-Pocket Expense Claims must be supported by documentation but will entitle a successful claimant to their expenses that are fairly traceable to the Data Breach and do not exceed the $3,000 individual cap. (Doc. 83-1 at 15–16). If they opt for a Pro Rata Cash Payment, the Administrator will make pro rata payments subject to the Settlement Fund cap. (*Id.* at 15). On the other hand, the Injunctive Relief Class is not entitled to monetary relief. Instead, their relief is in the form of the cybersecurity measures Defendants have agreed to implement and maintain. (*See id.* at 16–19).

Rule 23(e)(2)(D) necessitates conducting an equity inquiry that looks to "whether the apportionment of relief among class members takes appropriate account of differences among their claims." Fed. R. Civ. P. 23(e)(2) 2018 Advisory Committee Notes. Here, to

be a member of the Damages Settlement Class, the individual's Social Security number must have been accessed by the cybercriminals behind the Data Breach.  (Doc. 83 at 39).  This means that individuals, whose other forms of PII or PHI were compromised in the Breach, are not entitled to monetary relief, despite incurring similar harm as the Damages Class Members.  It should be noted that other data breach class settlements make no such distinction in their settlement classes.  *See*, *e.g.*, *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4982986, at *10 (N.D. Cal. 2024) ("The settlement agreement defines the settlement class as 'all natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident.' "); *In re PostMeds, Inc. Data Breach Litig.*, 2024 WL 4894293, at *6 (N.D. Cal. 2024) ("The class is defined as '[a]ll U.S. residents who were sent notice that their Private Information was potentially compromised as a result of the Data Incident experienced by PostMeds, Inc. d/b/a TruePill…on or about October 30, 2023.' ").

Nonetheless, Plaintiffs explain and other courts have acknowledged that the theft of Social Security numbers presents a significantly greater risk of fraud compared to other personal information.  (Doc. 83 at 39); *see*, *e.g.*, *In re Episource LLC Data Breach Litig.*, 2026 WL 638864, at *4 (C.D. Cal. 2026) ("Social Security numbers are the type of sensitive private information that gives rise to an imminent risk of future identity theft or fraud when misappropriated.").  Therefore, for preliminary approval purposes, Plaintiffs have presented a sufficient reason for the distinction.  *See Arthur v. Sallie Mae, Inc.*, 2012 WL 90101, at *11 (W.D. Wash. 2012) ("Regular Class Members and Delinquent Class Members differ in their eligibility for a Cash Award or a Reduction Award, and this distinction is based on each Class Member's payment history.  The court is not persuaded by [the intervenor's] argument and finds that there is sufficient justification for the distinctions between Class Members to warrant preliminary settlement approval."); *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *11 (C.D. Cal. 2021) ("Settlement Class Members who do not have their Class Products, proof of purchase, or proof of destruction will have difficulty proving that they did in fact purchase the Class Products.

Consequently, Settlement Class Members in the third group would have weaker claims against Harbor Freight than Settlement Class Members in the first and second groups. Their lesser relief is therefore justified and equitable."). Moreover, under the terms of the Agreement, Injunctive Relief Class members do not waive their individual claims for monetary relief.

Finally, nothing on the face of the Agreement indicates that any special treatment is carved out for the representative Plaintiffs. The Court notes that Settlement allows for Plaintiffs to seek service awards of up to $2,500.00 each. (Doc. 83-1 at 26). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–959 (9th Cir. 2009). District courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). However, while the Court will ultimately weigh the appropriate considerations to determine the propriety of any awards, the proposed service awards are not "per se unreasonable" and are discretionary; therefore, they do not impede preliminary approval. *In re PostMeds*, 2024 WL 4894293, at *6.

The Court is preliminarily satisfied that the difference in potential recovery takes appropriate account of Settlement Class Members' individual circumstances and does not result in preferential treatment to any Member.

### 4.    Range of Possible Approval

The final factor at the preliminary stage is whether the settlement is within the range of possible approval. To evaluate the sufficiency of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "This requires the Court to evaluate the strength of Plaintiffs' case." *In re Lenovo Adware Litigation*, 2018 WL 6099948, at *8 (N.D. Cal. 2018). Here, the proposed

Settlement Fund is $1,750,000, and there are an estimated 258,070 members of the Damages Settlement Class, which leads to a settlement value of $6.78 per member.  While the exact amount each claimant will ultimately receive is not known, the Settlement Fund assuredly falls within the range of possible approval, given the settlements reached in comparable cases.  *In re Yahoo!*, 2020 WL 4212811, at *10 (approving a Settlement Fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. 2022) (collecting cases with estimated settlement values of less than $1 per class member).  Moreover, "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."  *Hashemi*, 2022 WL 2155117, at *7.  In consequence, there is a substantial risk in continuing litigation here could result in a much smaller recovery or no recovery at all.  Lastly, the Agreement provides for significant injunctive relief, which augments the overall value of the Settlement.  The Court finds that, given these considerations, the Settlement Fund weighs in favor of approval.

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and will grant preliminary approval.

### C.      Proposed Notice Plan

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Specifically, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

Upon review, the proposed notice is adequate in both content and form. The proposed notice includes all necessary information under Rule 23(c)(2)(B), sufficiently notifying potential Damages Settlement Class Members of their rights. (*See* Doc. 80-6). As to the methods of notice, the Agreement provides that Damages Settlement Class Members will be provided Notice via email when available, and, for those without a provided email address or when an email bounces back, the Member will be sent the Short Form Notice by mail. (Doc. 83 at 15–16). In addition, a Settlement Website will be maintained, containing necessary forms and information regarding the Settlement. (Id. at 16). These methods of providing notice are routinely used to notify potential members of class action settlements and have been found to conform with due process requirements. *See*, *e.g.*, *Flores v. Computer Merchant, Ltd.*, 2026 WL 457566, at *17–18 (S.D. Cal. 2026) (approving virtually the same notice plan as described here); *In re PostMeds*, 2024 WL 4894293, at *7 (same).

On the other hand, those in the Injunctive Relief Class will receive Notice by publication, and said publication will direct the Settlement Class to the Settlement Website to acquire full details about the Settlement Agreement. (Doc. 83 at 16). Other courts have determined that no notice is required for an injunctive settlement. *See*, *e.g.*, *Lilly v. Jamba Juice Company*, 2015 WL 1248027, *9 (N.D. Cal. 2015) ("Because, even if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, the Court concludes that class notice is not necessary."); *Jermyn v. Best Buy Stores*, 2012 WL 2505644, at *12 (S.D.N.Y. 2012) ("Because this injunctive settlement specifically

- 15 -

preserves and does not release the class members' monetary claims, notice to the class members is not required."). With this in mind, the Notice by publication to the Injunctive Relief Class is sufficient.

In all, the Notice Program as proposed complies with Rule 23 and due process mandates and therefore will be approved.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 83) is **GRANTED**.

**IT IS FURTHER ORDERED** as follows[2]

The Court preliminarily finds:

1.    The Court, pursuant to 28 U.S.C. § 1332, has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Medical Management Resource Group, L.L.C.; Barnet Dulaney Perkins Eye Center, PC; Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute; Southwestern Eye Center, Ltd.; and Eye Associates of Nevada d/b/a SWEC Vision Institute and any party to any agreement that is part of or related to the Settlement Agreement.

2.    The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable, and adequate such that it is hereby preliminarily approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing should be held as set forth below.

3.    Solely for purposes of the Settlement, the Court conditionally certifies the following Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Damages Settlement Class"):

> The approximately 258,070 U.S. residents whose Social Security numbers and other personal information were compromised in the Data Breach. The Damages Settlement Class Members are eligible to submit a claim under the Damages Class Benefits. Plaintiffs Karen Foti Williams, Michael Martinez, Robert Kirk, Lynda Israel, Ken Waters, and David Yeager are Damages

---

[2] Plaintiffs appear to have recycled a prior proposed order to create the proposed order in these proceedings. Plaintiffs inexplicably attached the same proposed order to their Motion twice, and, in both documents, there is reference to a party "Enroll" that is not a party to this action. (*See* Doc. 83-1 at 82, 87; Doc. 83-3 at 8, 12). Plaintiffs are advised to exercise greater care in compiling their filings to the Court.

Settlement Class Members. Excluded from the Damages Settlement Class are the Defendant, their representatives, any judicial officer presiding over the matter, and such judicial officer's immediate family members and staff.

4.    Solely for purposes of the Settlement, the Court conditionally certifies the following Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2) ("Injunctive Relief Class", and together with the Damages Settlement Class, the "Settlement Class"):

All individuals whose personal information is collected or maintained by Defendant. Plaintiffs Linda Hulewat; Karen Foti Williams; Ralph Gallegos; Michael Martinez; Lynnae Anderson; Marie Therese Montoya; Charles Peterson; Robert Kirk; Marilyn Zajacka; Lynda Israel; Latricia Pelt; Barry Pelt; Ken Waters; Robert Ahrensdorf; and David Yeager are Injunctive Relief Class Members. Excluded from the Injunctive Relief Class are Defendant, their representatives, any judicial officer presiding over the matter, and such judicial officer's immediate family members and staff.

5.    Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b) are satisfied in that:

(a) the Settlement Class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the Settlement Class;

(c) Plaintiffs and Class Counsel (as defined below) fairly and adequately represent the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; (d) the Claims of Plaintiffs are typical of those of Settlement Class Members;

(e) common issues predominate over any individual issues affecting the members of the Settlement class; and

(f) settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

6.    The Court appoints Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Raina C. Borrelli of Strauss Borrelli PLLC, Terence Coates of Markovits, Stock & DeMarco, LLC, and J. Austin Moore of Stueve Siegel Hanson LLP as

- 17 -

Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

7. The Court hereby appoints Plaintiffs Linda Hulewat, Karen Foti Williams, Ralph Gallegos, Michael Martinez, Lynnae Anderson, Marie Therese Montoya, Charles Peterson, Robert Kirk, Marilyn Zajacka, Lynda Israel, Latricia Pelt, Barry Pelt, Ken Waters, Robert Ahrensdorf, and David Yeager as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

8. The Court preliminarily approves the Settlement Agreement, as well as the Long Notice, Short Notices, and Publication Notice to the Settlement Agreement, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth the Settlement Agreement ("Notice Plan") complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process of law, and is the best notice practicable under the circumstances.

9. The Court further approves the Claim Form, substantially similar to Exhibit C attached to the Settlement Agreement. The Claim Form, Exhibit A to the Settlement Agreement, will be available on the Settlement Website and by request.

10. The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement and the Final Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

11. No later than thirty (45) days from the date of this Order preliminarily approving the Settlement Agreement, the Settlement Administrator shall send the Short Notices to each Damages Settlement Class Member through mailing the Short Form Notices via electronic mail and/or U.S. Mail, first-class; and shall publish the Long Notice on the Settlement Website as stated in the proposed Notice Plan. The Settlement Administrator will also publish notice to the Injunctive Relief Class as stated in the

proposed Notice Plan. Contemporaneously with seeking Final Approval of the Settlement, Class Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with the Notice Plan.

12. All costs incurred in disseminating or otherwise in connection with the Settlement Notice shall be paid from the Settlement Fund pursuant to the Settlement Agreement.

13. The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and are thus approved for dissemination to the Settlement Class. The Claim Forms shall be made available to the Settlement Class Members as set forth in the Notice Plan and shall be made available to any Claims and the Released Parties.

14. The Settlement Administrator shall prepare and send all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. 1715. Class Counsel and Counsel for Defendant shall cooperate promptly and fully in the preparation of such notices, including providing Defendant potential Class Member that requests one.

15. Pursuant to the Settlement, Plaintiffs shall file their motion requesting attorney fees, costs, and service awards no later than 14 days before the Damages Settlement Class's Opt-Out and Objections deadlines.

16. The Damages Settlement Class Members may opt-out or object up to sixty (60) days after the Notice Date (the Opt-Out Deadline).

17. Any member of the Damages Settlement Class Members who wish to be excluded (opt-out) from the Damages Settlement Class must send a written request to the designated Post Office box established by the Claims Administrator postmarked on or before the Opt-Out Deadline. Members of the Damages Settlement Class may not opt-out of the Settlement by submitting requests to opt out as a group or class, but must in each instance individually and personally submit an opt-out request. All Damages Settlement Class Members who opt-out of the Settlement will not be eligible to receive any benefits

under the Settlement, will not be bound by any further orders or judgments entered for or against the Damages Settlement Class, and will preserve their ability to independently pursue any claims they may have against Defendant.

18.    Any member of the Damages Settlement Class Members who does not properly and timely opt-out of the Settlement shall, upon entry of the Final Approval Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Released Claims, whether or not such Damages Settlement Class Member objected to the Settlement and whether or not such Damages Settlement Class Member received consideration under the Settlement Agreement.

19.    A hearing on the Settlement (the Final Approval Hearing) shall be held before the Court at the Sandra Day O'Connor U.S. Courthouse, Courtroom 605, 401 W. Washington St., Phoenix, AZ 85003-2161 on December 10, 2026 at 10:00 a.m.

20.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the release of claims; (d) entry of a final approval order; and (e) entry of final judgment in this Litigation. Proposed Class Counsel s application for award of attorney fees and expenses, and requests for the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

21.    The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out Deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Fairness Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Fairness Hearing will be posted on the Settlement Website.

22.   Any person or entity who or which does not elect to be excluded from the Damages Settlement Class may, but need not, enter an appearance through their own attorney. Damages Settlement Class Members who do not timely object or opt out and that do not have an attorney who enters an appearance on their behalf will be represented by Class Counsel.

23.   Any person or entity who or which does not elect to be excluded from the Damages Settlement Class may object to the proposed Settlement. Any Damages Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Proposed Class Counsel's Application for fees and expenses, or (d) the service award request, by (i) serving a written objection upon Proposed Class Counsel and Defendant's counsel or (ii) filing the written objection with the Court through the Court's ECF system, with service on Proposed Class Counsel and Defendant's counsel made through the ECF system.

24.   Any Damages Settlement Class Member making the objection (an "Objector") must submit the objection in writing and include all the following information: (i) the objector's full name and address; (ii) the case name and docket number: *Hulewat et al. v. Medical Management Resource Group LLC d/b/a American Vision Partners, et al.*, Case No. 2:24-cv-00377-DJH; (iii) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Damages Settlement Class, or to the entire Damages Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.. To be timely, any objection must be filed with the Clerk of Court no later than sixty (60) Days after Notice Date.

25.   If the objecting Damages Settlement Class Member intends to appear at the

Final Approval Hearing through counsel, the notice of appearance filed with the Court must also identify the attorney(s) representing the objector who will appear at the Final Approval Hearing and include each such attorney's name, address, phone number, email address, state bar(s) to which counsel is admitted.

26.    If the objecting Damages Settlement Class Member intends to request permission from the Court to call witnesses at the Final Approval Hearing, the objecting Settlement Class Member must provide a list of any such witnesses together with a brief summary of each witness's expected testimony at least thirty (30) Days before the Final Approval Hearing.

27.    In order to be timely, objections, along with any notices of intent to appear, must be mailed to Proposed Class Counsel and Defendant's Counsel with a postmark date of no later than sixty (60) days after the Notice Date.

28.    Only Damages Settlement Class Members who have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Fairness Hearing. Any Damages Settlement Class Member who does not timely mail or file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Released Claims and Released Parties; (c) entry of Final Approval Order or any judgment; (d) Proposed Class Counsel's application for fees, costs, and expenses, and/or (e) the Service Award requests for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

29.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval.

30.    Upon entry of the Order and Final Judgment, all members of the Damages Settlement Class who have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Defendant with respect to all of the Released with any and all information in their possession necessary for the preparation of these notices. Defendant shall provide courtesy copies of the notices to Proposed Class

Counsel for the purpose of implementing the settlement.

31. Upon entry of the Order and Final Judgment, each Injunctive Relief Class Member shall be deemed to have, fully, finally, and forever released, relinquished, and discharged the Released Parties from any and all claims for injunctive and/or declaratory relief.

32. The Court hereby appoints the settlement administrator proposed by the parties, Kroll Settlement Administration (the "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Settlement Class; (c) developing a web site to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Damages Settlement Class Members relating to claims administration; (e) administering the Settlement Fund, and; (f) distributing settlement benefits to the Damages Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid from the Settlement Fund.

33. In the event the Settlement Agreement and the proposed settlement are terminated in accordance with the applicable provisions of the Settlement Agreement, the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Defendant, and shall retain any and all of their current defenses and arguments thereto. The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34. Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the

Settlement Agreement or herein or in any other settlement related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Defendant as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed settlement.

35.    The Court orders the following schedule of dates for the specified actions/further proceedings:

| | |
|---|---|
| **Grant of Preliminary Approval** | June 30, 2026 |
| Defendant provides list of Settlement Class Members to the Settlement Administrator | 7 days after entry of Preliminary Approval Order |
| Notice Date | 45 Days after Preliminary Approval |
| Deadline for filing of Motion for Final Approval, including Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Award | 14 days before the Damages Class Members' Objection and Opt-Out Deadline |
| Objection Deadline | 60 Days after Notice Date |
| Opt-Out Deadline | 60 Days after Notice Date |
| Claims Deadline | 90 Days after Notice Date |
| **Final Approval Hearing** | December 10, 2026 at 10:00 a.m. |

Dated this 30th day of June, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 24 -