Cristina Perez Hesano (#027023)
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, Arizona 85301
Phone: (602) 730-7100
Fax: (602) 794-6956
cperez@perezlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Linda Hulewat; Karen Foti Williams; Ralph Gallegos; Michael Martinez; Lynnae Anderson; Candia Franklin; Marie Therese Montoya; Charles Peterson; Robert Kirk; Marilyn Zajacka; Lynda Israel; Latricia Pelt; Barry Pelt; Ken Waters; Brenda Moreno-Decerra; Robert Ahrensdorf; and David Yeager**; individually, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Medical Management Resource Group, L.L.C.; Barnet Dulaney Perkins Eye Center, PC; Marc Ellman, M.D., P.A. d/b/a Southwest Eye Institute; Southwestern Eye Center, Ltd.; and Eye Associates of Nevada d/b/a SWEC Vision Institute**,<br><br>Defendant. | Case No. 2:24-cv-00377-DJH<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF REQUESTS FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. FACTS AND PROCEDURAL HISTORY ............................................................ 2

III. ARGUMENT ............................................................................................ 2

A. The Requested Fee Amount is Reasonable Under the Percentage-of- Fund Method. .. 3

B. The *Vizcaino* Factors Support the Award Requested. ........................................ 4

1. Class Counsel achieved a favorable result for the Class. .............................. 5

2. The litigation was risky, complex, and expensive. ....................................... 7

3. Counsel performed superior quality work to achieve the Settlement. .......... 9

4. Class Counsel worked on a contingent basis. ............................................ 10

5. Fees awarded in comparable cases exceed those requested here. ............... 12

6. The reaction of the Class supports the fee request. .................................... 14

C. A Lodestar Cross-check Confirms the Reasonableness of the Attorneys' Fees Requested. ........................................................................................ 15

1. Class Counsel Should be Reimbursed for Their Litigation Expenses. ....... 16

D. The Court should grant a Service Award for each Class Representative. .................. 17

IV. CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**CASE(S)** **PAGE(S)**

*Aguilar v. Wawona Frozen Foods*,
No. 1:15-cv-00093-, 2017 WL 2214936 (E.D. Cal. May 19, 2017) .......... 14

*Allagas v. BP Solar Int'l, Inc.*,
No. 314CV00560SIEDL, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) .......... 10

*Avila v. LifeLock Inc.*,
No. 2:15-CV-01398, 2020 WL 4362394 (D. Ariz. July 27, 2020) .......... 13

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) .......... 13

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) .......... 11

*Boyd v. Bank of Am. Corp.*,
No. SACV 13–0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .......... 13

*Brown v. 22nd Dist. Agric. Ass'n*,
No. 15-CV-02578-DHB, 2017 WL 3131557 (S.D. Cal. July 24, 2017) .......... 12

*Burden v. Select Quote Ins. Servs.*, No. C,
No. 10-5966, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) .......... 13

*Ching v. Siemens Indus.*,
No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .......... 11

*Cicero v. DirecTV, Inc.*,
No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) .......... 3

*Dearaujo v. Regis Corp.*,
No. 2:14-cv-01408, 2017 WL 3116626 (E.D. Cal. July 21, 2017) .......... 13

*Fernandez v. Victoria's Secret Stores, LLC*,
No. CV 06-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) .......... 14

*Franco v. Ruiz Food Prods., Inc.*,
No. 1:10-cv-02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .......... 14

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 15

*Graham v. Capital One Bank (USA), N.A.*,
No. SACV 13-00743-JLS, 2014 WL 12579806 (C.D. Cal. Dec. 8, 2014) ............................... 5

*Hammond v. The Bank of N.Y. Mellon Corp.*,
No. 08 Civ. 6060(RMB)(RLE), 15 2010 WL 2643307 (S.D.N.Y. June 25, 2010).................... 7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 9

*Hawthorne v. Umpqua Bank*,
No. 11-6700, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015).................................................. 18

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................. 3

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................... 10

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)................................ 8

*In re Capacitors Antitrust Litig.*,
No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)........................................... 17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ....................................... 7, 8

*In re Heritage Bond Litig.*,
No. 02-ML-1, 475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................ 5, 9, 14

*In re Lenovo Adware Litig.*,
No. 15-md-0624, 2019 WL 1791420 (N.D. Cal. April 24, 2019)........................................... 17

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................... 13, 18

*In re Nuvelo, Inc. Sec. Litig.*,
No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................ 3

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 4, 5, 7

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................ 19

*In re Pac. Enters. Secs. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........................................ 13

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 8:10-ML-2151, 2013 WL 12327929 (C.D. Cal. July 24, 2012) .................... 9, 11

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................ 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........................................ 11

*In re Yahoo! Inc. Customer Data Breach Litig.*,
No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .................... 17

*Jordan v. Freedom Nat'l Ins. Servs. Inc.*,
No. CV-16-00362, 2017 WL 10185526 (D. Ariz. July 20, 2017) .................... 13

*Kissel v. Code 42 Software Inc.*,
No. 8:15-cv-01936, 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) .................... 4, 11, 16

*Knight v. Red Door Salons, Inc.*,
No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................... 9

*Laffitte v. Robert Half Int'l, Inc.*,
1 Cal. 5th 480, 376 P.3d 672 (2016) ........................................ 3

*Lee v. JPMorgan Chase & Co.*,
No. 13-cv-511, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) .................... 13

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........................................ 7

*Lozano v. AT&T Wireless Servs., Inc.*,
No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704 (C.D. Cal. Nov. 22, 2010) .................... 10

*Marshall v. Northrop Grumman Corp.*,
No. 16-CV-6794 AB (JCX), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .................... 4

*Mejia v. Walgreen Co.*,
No. 2:19-CV-00218 WBS AC, 2021 WL 1122390 (E.D. Cal. Mar. 24, 2021) .................... 15

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
No. CV 07-3072, 2009 WL 9100391 (C.D. Cal. June 24, 2009) .............................................. 3

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......................................................................................... 8

*Pierce v. Rosetta Stone, Ltd.*,
No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ..................................... 2

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................................................... 18

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05-CV-0484, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .................................... 4, 13

*Sevilla v. Aaron's, Inc.*,
No. CV 17-4053-DMG (EX), 2020 WL 10573205 (C.D. Cal. May 15, 2020) ......................... 4

*Singer v. Becton Dickinson Co.*,
No. 08-CV-821, 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................................. 14

*Smith v. CRST Van Expedited, Inc.*,
No. 10-CV-1116-IEG, 2013 WL 163293 (S.D. Cal. 2013)................................................... 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......................................................................................... 2

*Stuart v. Radioshack Corp.*,
No. C-07-4499, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)............................................... 14

*Syed v. M-I, LLC*,
No. 1:12-cv-1718, 2017 WL 3190341 (E.D. Cal. July 27, 2017) .......................................... 13

*United States v. Armour & Co.*,
402 U.S. 673 (1971)........................................................................................................ 9

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)................................................................................... 18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..................................................................................passim

*Williams v. MGM-Pathe Comms. Co.*,
129 F.3d 1026 (9th Cir. 1997) .......... 13

*Willner v. Manpower Inc.*,
No. 11-cv-02846, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .......... 16

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) .......... 10

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......... 14

*Zepeda v. PayPal, Inc.*,
No. C-10-2500, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) .......... 9

**RULES**

Fed. R. Civ. P. 23(e) .......... 2

Fed. R. Civ. P. 23(h) .......... 2

**OTHER AUTHORITIES**

*ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*,
65 Fordham L. Rev. 247 (1996) .......... 14

Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) .......... 5

## I. INTRODUCTION

Counsel for Plaintiffs Linda Hulewat, Karen Foti Williams, Ralph Gallegos, Michael Martinez, Lynnae Anderson, Marie Therese Montoya, Charles Peterson, Robert Kirk, Marilyn Zajacka, Lynda Israel, Latricia Pelt, Barry Pelt, Ken Waters, Robert Ahrensdorf, and David Yeager (collectively, "Plaintiffs") negotiated a proposed settlement resolving the claims of individuals who had their Private Information compromised as a result of a cyberattack on Defendants Medical Management Resource Group, L.L.C.; Barnet Dulaney Perkins Eye Center, PC ("Barnet"); and Southwestern Eye Center, Ltd. ("SWEC") (collectively, "Defendant" or "American Vision") computer system. (the "Data Breach").

The hard-won bargain achieved for the Class did not come easily. Rather, it took considerable time, effort, and skill from Class Counsel. To reach this result, Class Counsel expended extensive resources to investigate this case, interviewed potential plaintiffs, drafted multiple complaints, consolidated cases into a single class action lawsuit, researched and drafted the detailed consolidated complaint, engaged in months of settlement negotiations, and participated in formal mediation, before ultimately achieving the final result for the Class.

Plaintiffs and their Counsel now seek an award of attorneys' fees in the amount of one third of the Settlement Fund ($583,275) plus $14,945.31 in out-of-pocket litigation expenses. The Settlement Agreement further provides that Defendant will pay a $2,500 service award to each Named Plaintiff as compensation for his or her time and efforts participating in the case. Courts routinely approve such awards as "presumptively

reasonable." *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) ("In this district, a $5,000 payment is presumptively reasonable.") (citing cases).

The requested fee, expense, and service awards are reasonable and should be approved.

## II. FACTS AND PROCEDURAL HISTORY

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 83), and the accompanying exhibits filed in conjunction therewith. Plaintiffs also incorporate Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently with this Motion.

The Court granted preliminary approval of the Settlement on June 30, 2026. Doc. 103. Pursuant to the Settlement Agreement and the Court's Order Plaintiffs now submit this motion.

## III. ARGUMENT

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In deciding whether the requested fee amount is appropriate, the Court's role is to determine whether such amount is '"fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Where a class settlement results in the creation of common benefits, courts in this

Circuit may use either—or both—the "percentage-of-the-recovery" or the "lodestar-multiplier" method to determine a reasonable fee. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002). However, "the primary basis of the fee award remains the percentage method" while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Id.* at 1050. Indeed, courts frequently use the percentage method as it 'is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'" *Laffitte v. Robert Half Int'l, Inc*., 1 Cal. 5th 480, 490, 376 P.3d 672, 677 (2016) (citation omitted).

Here, under any measure, the requested fee is fair, reasonable, and adequate.

**A. The Requested Fee Amount is Reasonable Under the Percentage-of- Fund Method.**

Under the percentage of the fund approach, class counsels' fees are calculated as a percentage of the common benefit generated through their efforts. Numerous district courts in this Circuit have recognized that "nearly all common fund fee awards range around 30%" of the overall benefit recovered. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989); *see In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (finding "an exhaustive list of cases" indicating that the Ninth Circuit's benchmark "is at approximately 30% of the fund"); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072, 2009 WL 9100391, at *3-5 (C.D. Cal. June 24, 2009) ("attorneys' fees in class actions averaged approximately 32% of the recovery"); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010

WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("[C]ase law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded[.]"); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-CV-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("[F]ee awards in class actions average around one-third of the recovery.") Here, Class Counsel's request for attorneys' fees in the amount of 33.33% of the Settlement Fund is reasonable, as the benchmark is regularly adjusted upward in circumstances such as this where an exception result is achieved for the class. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *1 (C.D. Cal. Sept. 18, 2020) (awarding class counsel attorneys' fee of one-third the settlement fund where an "exceptional result" was achieved); *Sevilla v. Aaron's, Inc.*, No. CV 17-4053-DMG (EX), 2020 WL 10573205, at *2 (C.D. Cal. May 15, 2020) ("It is also not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the circumstances warrant it.") (citation omitted).

**B. The *Vizcaino* Factors Support the Award Requested.**

In assessing a fee award, the Ninth Circuit directs courts to consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel v. Code 42 Software Inc.*, No. 8:15-cv-01936, 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support the requested fee.

**1. Class Counsel achieved a favorable result for the Class.**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Graham v. Capital One Bank (USA), N.A.*, No. SACV 13-00743-JLS, 2014 WL 12579806, at *5 (C.D. Cal. Dec. 8, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046); *see also In re Heritage Bond Litig*., No. 02-ML-1475, 2005 WL 1594389 at *8 (C.D. Cal. June 10, 2005) ("result achieved is a major factor" in making fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) (the "fundamental focus is the result actually achieved for class members") (citation omitted). Outstanding results merit a higher fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (awarding a fee of 28 percent).

Here, The Settlement provides relief for both an Injunctive Relief Class and a Damages Settlement Class. Settlement Agreement ("S.A.") ¶ 1.32. The Injunctive Relief Class is defined as "all individuals whose personal information is collected or maintained by Defendant." *Id*. ¶ 1.15. The Damages Settlement Class is defined as the "approximately 258,070 U.S. residents whose Social Security numbers and other personal information were compromised in the Data Breach." *Id*. ¶ 1.9. Specifically, under the Settlement Agreement, Defendant shall fund a non-reversionary Settlement Fund ("Settlement Fund") in the amount of one million seven hundred and fifty thousand dollars ($1,750,000). S.A., ¶ 1.33. The Settlement Fund shall be used to cover all Settlement Administration Costs, all valid Claims by the Damages Settlement Class, Service Awards to the Class Representatives, and any attorneys' fees and expenses to Class Counsel and Plaintiffs'

Counsel. S.A., ¶ 2.13.

The Court previously held that the Settlement is fair, reasonable, and adequate as to the Class Members. Preliminary Approval Order, Doc. 103. The amount of compensation per Damages Settlement Class Member is substantial, with each Damages Class Member being entitled to a year of credit monitoring as well as up to $3,000 in documented losses, or a pro rata alternative cash payment from the $1,750,000 Settlement Fund. S.A., ¶ 2.2.1. These benefits directly address the harm alleged by Plaintiffs, on behalf of the Class, which resulted from the Data Breach.

Plaintiffs believe that they would succeed in litigation and be able to recover damages on behalf of the Class. However, they recognize that the range of potential litigation outcomes is large. The scope of damages would depend in large part on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain and loss of value of private information theories), and which causes of action survive. Whether the case would be litigated to a favorable outcome and the amount obtained through continued litigation are not certain, and the case is subject to numerous risks. Through this settlement, practical remedies that have been absent become imminently available. Even if Plaintiffs achieved a successful judgment, relief to Class Members would likely be forestalled for years following the exhaustion of appeals. Based on the size of the breach and the substantial litigation risks, the Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements.

The results achieved here are substantial, and support Class Counsel's fee request.

**2. The litigation was risky, complex, and expensive.**

Risk is a critical factor in determining a fair fee award. *In re Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.") (citing *Vizcaino*, 290 F.3d at 1048).

Data breach cases in particular are among the riskiest and most uncertain of all class action litigation. Such cases are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig*., No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions). Although nearly all class actions involve a high level of risk, expense, and complexity, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), data breach cases are especially so. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060(RMB)(RLE), 15 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception to that rule. Defendant has emphatically denied Plaintiffs' allegations of wrongdoing, and in continued litigation will vigorously defend against Plaintiffs' claims. It involves complicated and technical facts, highly skilled opposing counsel, contested issues on class certification, and substantive defenses. There are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate.

Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060, 2010

WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely uncharted territory and full of uncertainty.

As in any litigation, Plaintiffs faced significant risk of no recovery. Plaintiffs also faced uncertainty with respect to obtaining and maintaining class certification. Success at class certification has been challenging in data breach cases. Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 WL 256132, at *33. Although Plaintiffs believe they would have prevailed in this action, a verdict for the defense was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. While Plaintiffs believe they could overcome these challenges, any of these defenses, if successful, could end the case entirely and result in the Settlement Class Members receiving nothing at all. The proposed Settlement therefore achieves a far more certain and preferable result for the Settlement Class members than continued litigation, as it strikes an appropriate balance between the potential benefits, on the one hand, and the risks and costs associated with continued litigation, on the other. *Officers for Justice v.*

*Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *United States v. Armour & Co*., 402 U.S. 673, 81-82 (1971). This factor supports the appropriateness of the requested fee award.

**3. Counsel performed superior quality work to achieve the Settlement.**

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2012) (quoting *Knight v. Red Door Salons, Inc*., No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005 WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are excellent.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998). Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. Class Counsel are highly specialized in field of data breach class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. *See* Klinger Decl., ¶¶ 16-18. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the Complaints, coordinating all the cases, researching and drafting the detailed Consolidated Complaint, and negotiating and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc*., No. C-10-

2500, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Defendant was also represented by highly experienced and competent counsel, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a national, highly respected, national law firm with significant resources and substantial experience defending consumer and data breach class actions. This factor, therefore, weighs in favor of the requested fee award.

**4. Class Counsel worked on a contingent basis.**

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Lozano v. AT&T Wireless Servs., Inc.*, No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704, at *1 (C.D. Cal. Nov. 22, 2010). Courts long have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee

to compensate them for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (observing courts reward successful class counsel in contingency cases "by paying them a premium over their normal hourly rates").

This factor deserves particular weight under the unique circumstances of this matter. If Class Counsel had been able to negotiate a fee directly with Class Members, a 33.33% contingent fee percentage would have been eminently reasonable, and in line with market rates for a case this complex, risky, and difficult.

"Attorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Wash. Pub. Power*, 19 F.3d at 1299; *Ching v. Siemens Indus*., No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an

enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was particularly challenging given these risks. Class Counsel expended significant resources despite the genuine risk that they would never be compensated at all—not only in this litigation, but also with competing cases in other districts that could have settled without Class Counsel foregoing that other work to focus on this case. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. To date, Class Counsel have received no compensation at all litigating this case on behalf of the Class. Moreover, Class Counsel faced a Defendant with ample resources to vigorously fight the litigation, represented by experienced counsel. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

**5. Fees awarded in comparable cases exceed those requested here.**

The requested fee here is one third of the Settlement Fund created for the benefit of the Damages Settlement Class. There is an overwhelming amount of support for the reasonableness of this request in this Circuit. "Empirical studies show that, regardless

whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "Under the percentage method, California has recognized that most fee awards . . . are 33 percent …." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. 2013). Indeed, the Ninth Circuit has repeatedly found attorneys' fee awards of 33% of the recovery to be fair and reasonable. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of total recovery); *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362, 2017 WL 10185526, at *2 (D. Ariz. July 20, 2017) (Rayes, J.) (approving fees and expenses totaling 41% of common fund); *Avila v. LifeLock Inc.*, No. 2:15-CV-01398, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (awarding fees of 30% of $20 million fund); *Syed v. M-I, LLC*, No. 1:12-cv-1718, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017) (awarding one-third of $7 million common fund); *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-third of recovery); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (same); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561, 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote Ins. Servs.*, No. C 10-5966, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013)

(same); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (same); *Singer v. Becton Dickinson Co.*, No. 08-CV-821, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33% and citing two prior similar Southern District awards); *Stuart v. Radioshack Corp*., No. C-07-4499, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34%); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-, 2017 WL 2214936, at *9 (E.D. Cal. May 19, 2017) (awarding 33%); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *27-28 (N.D. Cal. Apr. 1, 2011) (awarding 42% of $27 million fund).

In addition, the requested fee is at the low end of the prevailing percentage for standard contingency-fee agreements in individual cases. *See Vizcaino*, 290 F.3d at 1049. Surveys have estimated that contingency-fee percentages in individual litigation start at 33% and go up to 40%. *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996) ("standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries").

Accordingly, this factor supports the requested fee here.

**6. The reaction of the Class supports the fee request.**

The reaction by Class Members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage,* 2005 WL 1594389, at *15. As of the filing of this motion, no class members have objected to the Settlement or the attorney fee and expense request. This is true even though the amount of fees Class Counsel

intended to request was publicized in the notice to the Class. The fact that no Settlement Class Member has submitted an objection reflects a highly positive response by the Settlement Class. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (N.D. Cal. Apr. 22, 2010) (finding that only one objector to settlement and fee request represented an "overwhelmingly positive" response from the class of 24,358 members); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement.").

**C. A Lodestar Cross-check Confirms the Reasonableness of the Attorneys' Fees Requested.**

Application of the lodestar method as a cross-check confirms the reasonableness of the fees requested here. *See Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). Plaintiffs' Counsel and their respective staffs have devoted a total of approximately 821.7 hours to this litigation and have a total lodestar to date of $680,966.90. Klinger Decl. ¶ 13. This represents a negative lodestar multiplier of .85 based on the requested fee, meaning that Class Counsel will recuperate payment for just 85% of the amount of time expended on this matter when applying their standard hourly rates. *Id*. Courts in the Ninth Circuit routinely approve much higher multipliers. *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (discussing court approval of lodestar multipliers from 2.0 to 4.5 and noting

that risk multipliers "between 3 and 4.5 have become more common") (citations omitted); *Vizcaino*, 290 F.3d at 1052 appx. (finding that risk multipliers range between 1.0 and 4.0 in 83% of cases). All of Class Counsel's time was reasonable and necessary for the prosecution of this action. Class Counsel took meaningful steps to ensure the efficiency of their work. Klinger Decl. ¶ 14. Further, these amounts do not include the additional time that Class Counsel will have to spend through the conclusion of this matter, including finalizing and filing this motion and the final approval motion, attending the final approval hearing, and overseeing the distribution of Settlement benefits to the Class. *Id*. ¶ 13.

Class Counsel here are experienced, highly regarded members of the bar. They have brought to this case extensive experience in the area of consumer class actions and data breach and privacy litigation. Class Counsel's customary rates are in line with prevailing rates in this District, have been approved by courts in this District and other courts, and are in line with the rates charged by contemporaries in the data breach bar. *Id*. ¶ 14.

The lodestar cross-check thus confirms the reasonableness of the requested fee award, particularly in light of the significant results achieved by the Settlement, the contingent nature of Class Counsel's representation, and the skill and expertise Class Counsel employed maneuvering the case toward a favorable Settlement.

**1. Class Counsel Should be Reimbursed for Their Litigation Expenses.**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel*, 2018 WL 6113078, at *6. This includes expenses that are reasonable, directly related to the litigation, and normally charged to a fee-paying client. *Willner v. Manpower Inc.*, No. 11-cv-02846, 2015 WL 3863625, at *7

(N.D. Cal. June 22, 2015).

Here, Settlement Class Counsel request reimbursement of expenses of $14,945.31. Klinger Decl., ¶ 18. The requested expense reimbursement represents Class Counsel's actual out-of-pocket litigation costs for items such as filing fees, mediation fees, and pro hac vice fees. These expenditures were necessary to Class Counsel's prosecution of the action and are particularly reasonable given the complexities of this case. Such costs are regularly billed to clients in hourly fee cases and routinely awarded in contingency fee cases. *See, e.g., In re Yahoo! Inc. Customer Data Breach Litig*., No. 16-MD-02752, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of expenses related to expert witness fees, case-related travel, transcript fees, document management, copying, mailing, and serving documents, operation of a call center to respond to Settlement Class Member inquiries, electronic research, and filing and court fees); *In re Capacitors Antitrust Litig*., No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs.") (citations omitted); *In re Lenovo Adware Litig*., No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. April 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

**D. The Court should grant a Service Award for each Class Representative.**

Class Counsel also request that the Court approve service awards in the amount of $2,500 for each Class Representative. Service awards are typically awarded in class actions, and "are intended to compensate class representatives for work done on behalf of

the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009).

Each of the Plaintiffs expended considerable effort on behalf of the Class by, among other things: (1) participating in plaintiff vetting interviews with Class Counsel at the outset of the case; (2) gathering and providing supporting documents to Class Counsel; (3) assisting with investigation of the facts; (4) reviewing the complaints prior to filing; and (5) consulting with Class Counsel during the litigation and settlement negotiations. Their commitment to the Class's interests and desire to remedy these issues, not just for themselves, but also the entire Class, was essential to the successful and timely prosecution of this class action and, in Class Counsel's view, warrants recognition in the form of the service awards requested. Their commitment is notable given the modest size of their personal financial stakes in the matter. *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) ("In exchange for his participation, [named plaintiff] will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

The $2,500 service awards sought fall at the lower end of the spectrum of amounts awarded in comparable cases. *See, e.g., Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'") (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (service awards of

$5,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (approving service awards of $5,000 to class representatives in a consumer case).

In light of the Class Representatives' willingness to step forward and their continued commitment to pursue this litigation for the benefit of the Class, the Court should grant the requested Service Awards.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion and approve Class Counsel's request for: (i) attorneys' fees in the amount of $583,275.00; (iii) reimbursement of reasonable costs in the amount of $14,945.31; and (iii) payment of service awards of $2,500 to each of the Class Representatives.

Dated: September 29, 2026

*/s/ Gary M. Klinger*
Gary M. Klinger (*pro hac vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Raina C. Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Cristina Perez Hesano (#027023)
cperez@perezlawgroup.com
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: 602.730.7100

Fax: 623.235.6173

Elaine A. Ryan (AZ Bar No. 012870)
Colleen M. Auer (AZ Bar No. 014637)
**AUER RYAN, P.C.**
20987 N. John Wayne Pkwy.
Suite B104-374
Maricopa, AZ 85139
Telephone: (520) 705-7332
Email: eryan@auer-ryan.com
Email: cauer@auer-ryan.com

Terence R. Coates (*pro hac vice*)
Jonathan T. Deters (*pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
Email: tcoates@msdlegal.com
Email: jdeters@msdlegal.com

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Stefon J. David (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Email: siegel@stuevesiegel.com
Email: moore@stuevesiegel.com
Email: david@stuevesiegel.com

Amanda Boltax (*pro hac vice*)
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: aboltax@hausfeld.com

Patrick Donathen (*pro hac vice*)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: patrick@lcllp.com

Nickolas J. Hagman (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Ste. 3210
Chicago, IL 60603
Phone: (312) 782-4880
Email: nhagman@caffertyclobes.com

Cecily C. Jordan (*pro hac vice*)
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
Email: cjordan@tousley.com

Charles E. Schaffer (*pro hac vice*)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Email: cschaffer@lfsblaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Gary M. Klinger, hereby certify that on September 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 29th day of September, 2026.

By: */s/ Gary M. Klinger*